**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| William Pipes, Brittany Pipes, Briana Pipes, Takoda Pipes, Isaiha Pipes, | ) ) ) | |
| Plaintiffs, | ) ) | **REPORT AND RECOMMENDATION AND ORDER TO SHOW CAUSE** |
| vs. | ) ) | |
| United States of America, Steve Engen, Ken Halvorson, Corey Bristol, Jessica Folden, Titus Unknown, Steve Hall, Wade Enget, State Patrol Officer (unknown), Jason (unknown), Steve Gutknect, Dale Maixner, McKenzie Co. S.O./Jail, Sue Lloyd, Vicki Klein, John Evenson, Dr. Heninger, | ) ) ) ) ) ) ) ) ) | Case No. 1:07-cv-057 |
| Defendants. | ) ) | |

Plaintiff, William Pipes ("Pipes"), is currently an inmate at the James River Correction Center ("JRCC"). He has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, naming also four of his children – Brittany, Briana, Takoda, and Isaiha – as co-plaintiffs.[1] In addition, he has filed a Motion to Proceed *In Forma Pauperis*. The case is now before the court for the screening mandated by 28 U.S.C. §1915A.

**I.      BACKGROUND**

The following background comes primarily from Pipes' complaint, although additional information was obtained during a screening hearing held with the plaintiff on November 16, 2007.

---

[1]Brittany, Brianna, Takoda, and Isaiha Pipes are also named as defendants on page four of Pipes' complaint, which is an obvious mistake, along with Colton Lane Pipes. There is no cause of action involving Colton Pipes, however, and he is not listed in the caption or mentioned anywhere else in the complaint. Consequently, it will be presumed he is not a party.

1

On February 10, 2006, Pipes was taken into custody following a probation search of the home of one of his daughters in Parshall, North Dakota, where he was apparently staying. Mountrail County Sheriff Ken Halvorson allegedly entered the residence without a warrant, announced he was investigating an anonymous tip relayed to him by Pipes' parole officer that Pipes was manufacturing meth, handcuffed Pipes, and, while awaiting the arrival of Pipes' parole officer, began rummaging through the kitchen cupboards. Meanwhile, other law enforcement officers arrived on the scene and began searching the residence as well as Pipes' car with the assistance of a drug sniffing dog. Pipes was subsequently transported to the Mountrail County jail.

On February 15, 2006, Pipes was charged in state district court with the following offenses: (1) meth manufacturing; (2) possession of meth within 1,000 feet of a school; and (3) paraphernalia. After spending slightly more than three months in custody, most of which was in the Mountrail County Jail in Stanley, North Dakota, he was released pending trial. Pipes claims the reason for his release was that he was held too long in the Mountrail County jail in violation of state law.

At the time of the filing of complaint in this action, Pipes was incarcerated at the JRCC. The reason why is not entirely clear, since the Mountrail County drug charges were still pending, but it may have been because his parole or probation had been revoked.

Pipes advised the court during the screening hearing that he recently pled guilty to two of the three Mountrail County drug charges and that the third charge was dismissed.

## II.   STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the  Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit. Jones v. Bock, __ U.S. __,127 S.Ct. 910, 914 (2007); Woodford v. Ngo, __ U.S.__, 126 S.Ct. 2378, 2382 (2006). One

of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit - prior or soon after the complaint is filed.   28 U.S.C. § 1915A.   In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.   Id.

In enacting the PLRA, Congress chose not to impose any heightened pleading requirements for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose such requirements. Jones v. Bock, __ U.S. __,127 S.Ct. 910, 919 (2007).  Consequently, to state a cognizable claim, the complaint need only meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2202 (2007) (*per curiam*).   In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys.  E.g., Erickson v. Pardus, 127 S.Ct. at 2202.  The court may not dismiss a *pro se* complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief."  Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); see also Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988).

Nevertheless, even though the  pleading requirements are minimal and complaints are to be liberally construed, this does not mean the court must accept anything and everything that is filed by a *pro se* prisoner.  In enacting the screening requirement, Congress expected it to be more than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with

those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous, or malicious.

"A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)). "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id. And, in terms of whether there is an arguable basis in fact, the court may disregard any factual allegations that are clearly fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 n.3 (2007). At the very least, even *pro se* prisoners must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964). In the case of action for a violation of federal civil rights under 42 U.S.C. § 1983, this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997). Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible given that § 1983 does not impose *respondeat superior*

4

liability.  Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); Madewell v. Roberts, 909 F.2d

1203, 1208 (8th Cir.1990); Martin v. Sargent, 780 F.2d 1334, 1337-39 (8th Cir.1985).

      Finally, even though the court is obligated to construe *pro se* complaints liberally, the court

is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim.

The court may accept as true all facts pled in the complaint and conclude from them that there is no

claim stated as a matter of law.  E.g., Edwards v. Snyder, 478 F.3d at 830; Thompson v. Illinois

Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[2]

### III.    DISCUSSION OF CLAIMS

      The complaint filed by Pipes is eighty-two pages in length and seeks to sue seventeen

different persons or entities with respect to numerous claims, including several that are completely

unrelated to the others. In addition, Pipes has also filed a second complaint, which is some forty

pages in length, that addresses some of the same subjects, albeit against different defendants.  The

second complaint will be the subject of a separate screening.

      The portion of the complaint in which Pipes attempts to set forth his claims consists of series

of lengthy narratives from which it is difficult to discern exactly what claims are being made.  Not

only are the narratives rambling and sometimes difficult to follow, it is not clear whether every

perceived illegality or insult that Pipes mentions is intended to be a separate claim or whether some

---

[2]  In Edwards v. Snyder, the Seventh Circuit stated the following:

Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For
example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading
requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading
standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the
plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965,
968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege
too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude
recovery.  See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir.2006).
478 F3d at 830.

are included simply as part of a list of things that Pipes claims must be investigated or as background.  In particular, what makes it difficult to distinguish between what is a claim and what is not is the failure to make reference to any particular federal constitutional or statutory right that is alleged to have been violated with respect to much of what is pled.  In fact, most of the references to claimed illegality are to state law.

On November 16, 2008, the court conducted a telephonic screening hearing to seek clarification from Pipes regarding a number of the claims and to determine what, if anything, may have changed as a consequence of his having pled guilty to two of the three  state drug charges in Mountrail County.[3]  Based on the material that has been filed and what Pipes related to the court during the screening hearing, the court has identified the claims set forth below.   To the extent that Pipes believes claims have been overlooked or omitted, the conclusion is that those allegations do not state cognizable claims and Pipes is free to try again, by filing either a motion to amend the complaint or a separate action.

A.      Individual claims

1.      Claim against the federal government for failure to take action (Claim #1)

Pipes alleges that the federal government has failed to protect him from the consequences of  a number of adverse decisions rendered in state and tribal courts in matters both criminal and civil.  He also complains that the federal government has failed to investigate and take action against a number of perceived illegalities and violations of his rights as a citizen of the United States. He seeks $9 million in damages from the federal government.

---

[3] In conducting the screening hearing, no attempt was made to resolve facts that may be disputed and, like the complaint, what Pipes claimed during the hearing has been assumed as being true for purposes of this report and recommendation.

There are numerous problems with this claim. First, 42 U.S.C. § 1983 requires a defendant has acted under the color of state law, see West v. Atkins, supra, which, obviously cannot be the federal government since it acts pursuant to federal law. For this reason alone, the federal government is not subject to suit under §1983. Bishop v. Tics, 622 F.2d 349, 355 n.9 (8ᵗʰ Cir. 1980).

Second, in order to sue the federal government, Pipes is required to demonstrate that there is a basis for the court's jurisdiction and an applicable waiver of sovereign immunity. E.g., Taylor v. United States, 248 F.3d 736, 737 (8ᵗʰ Cir. 200); V S Ltd. P'ship v. Dep't of Housing and Urban Dev., 235 F.3d 1109, 1112 (8th Cir.2000). This he has not done.[4]

Third, Pipes contends that he was mistreated or otherwise ignored by a mishmash of state, local, and tribal entities, but fails to specify with any particularity who did what to whom and when. Consequently, even if there was a jurisdictional basis for suing the federal government for allowing all of this to happen, along with an appropriate waiver of sovereign immunity, Pipes' contentions are simply too vague and conclusory to state a cognizable claim.

At the very least, the claim against the federal government should be dismissed for failure to state a cognizable claim.

**2.      Access to legal materials (Claim #2)**

Pipes contends that he was denied access to a copy of the North Dakota Century Code while incarcerated at the Mountrail County jail. Specifically, he contends:

> Also while at the Mountrail County jail I was denied NDCC books. The Jail Staff gave me several reasons why not including, I wasn't an attorney. I had an attorney. They didn't allow inmates law books. They were the Books that the States attorney, Judges, and Deputies used. I wasn't allowed access per the inmate handbook. They

---

[4] Given the nature of the allegations, it is doubtful there is an applicable waiver of sovereign immunity. Most likely, Pipes' remedy lies with Congress, in the political arena, and not in the courts.

didn't have to allow me to use them.  Talk to my attorney. They didn't want inmates handling them.

(Docket No. 1)

Essentially, this a denial of access-to-courts claim.  For such a claim, it is not sufficient to merely allege a denial of access to legal materials, even if the denial is systemic.  Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996).  "Instead, the [prisoner] must show the lack of a library or the attorney's inadequacies hindered the [prisoner's] efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." Id.  (citing Lewis v. Casey, 518 U.S. 343, 355).  In other words, the prisoner must plead prejudice or an actual injury.  Id.; see also  Klinger v. Department of Corrections, 107 F.3d 609, 616-617 (8th Cir. 1997).

Notably, Pipes' complaint is devoid of any allegation that he suffered prejudice to a nonfrivolous legal claim.  Sanders v. Sheahan, 198 F.3d 626, 630 (7th Cir.1999) (prisoner must "allege injury or prejudice" to state a claim of denial of access to the courts); see Lewis v. Casey, 518 U.S. at  349-355; Moore v. Plaster, 266 F.3d at 928, 933 (8th Cir. 2001).  Consequently, Pipes has not pled a cognizable claim and it should be dismissed.

### 3.        Access to Domestic Violence Counseling (Claim #3)

Pipes alleges that he was denied domestic violence counseling while incarcerated at the Mountrail County jail "because [he] was a man . . . and because [he] was an inmate not in jail for domestic violence."  However, he goes on to state that Sheriff Halvorson arranged for him to meet with a counselor from Minot HRC, who he claims was "childish, ignorant, and dismissed any notion that [he] may have been or could have been abused by a woman and suffered any adverse affects."

Pipes' latter statements contradict his initial assertion that he was denied access to domestic violence counseling. Whether he found the counseling helpful or agreed with the counselor's assessments is immaterial.

More importantly, however, the court is not aware of any constitutional right to domestic abuse counseling. Consequently, a decision to deny him access to counseling because he was not in jail for domestic violence would not give rise to a constitutional claim.

Finally, Pipes claims that the failure to afford him domestic violence counseling violates state law, *i.e.*, the provisions of N.D.C.C. ch. 12-44. However, a violation of state law by itself does not give rise to § 1983 claim, which must be based upon a violation of the United States Constitution or federal statute. Whisman v. Rinehart, 119 F.3d 1303, 1312 (8th Cir.1997) (alleged violation of state law does not by itself state claim under § 1983 ). And, while Pipes makes reference to state law, it is not clear that he is making a state law claim separate from his §1983 claim. But, even if he is, a review of N.D.C.C. ch. 12-44.1 (the successor to ch. 12-44 which has been repealed) reveals nothing that would indicate that prisoners must be afforded domestic violence counseling - much less a statutory provision that would give rise to a private cause of action for damages.

In summary, Pipes has failed to state a cognizable claim.

### 4. Interference with Legal Mail (Claim #4)

Pipes alleges that, while incarcerated at the Mountrail County jail, he "often received [his] confidential attorney-client mail opened before it was brought to me. It was not opened in [his] presence." While these allegations are vague and make no reference to specific dates or particular pieces of mail, the Eighth Circuit has held similar allegations to be sufficient to make out a cognizable claim given the liberal construction afforded *pro se* complaints. E.g., Owens v. Isaac,

487 F.3d 561, 564 (8ᵗʰ Cir. 2007); <u>Powells v. Minnehaha County Sheriff Dept.</u>, 198 F.3d 711, 712 (8ᵗʰ Cir. 1999).  Consequently, this claim should be allowed to go forward.[5]

### 5.      Interference with "Spiritual Mail" (Claim #5)

Pipes alleges that "on one occasion [he] found [his] spiritual mail in the visiting room."  He provides no additional detail or context, however.  While pleading specific facts is not required, Pipes still must plead enough to give fair notice of what the claim is and the grounds upon which it rests, which he has failed to do.  <u>Erickson v. Pardus</u>, 127 S.Ct. at 2200. Further, given that there is no *respondeat superior* liability under § 1983, Pipes has not pled enough to make out a cognizable claim regarding his "spiritual mail" with respect to any of the named defendants.  This claim should be dismissed for failure to state a cognizable claim.  Further, it is unlikely a single instance of non-privileged mail being "mishandled" would give rise to a constitutional claim that would be actionable under § 1983.

### 6.      Monitoring attorney-client conversations (Claim #6)

Pipes contends that jail staff refused to provide him with a secured telephone line on which he could speak privately with his attorney.  During the screening hearing, Pipes described how the calls he attempted to make were monitored in some fashion and, at this point, the court must accept Pipes' allegations as true.

Prohibiting all unmonitored telephone contact with an attorney <u>may</u>, in certain circumstances, give rise to a Sixth Amendment claim.[6]  <u>Cf.</u>, <u>Ching v. Lewis</u>, 895 F.2d 608, 609-10

---

[5] During the screening hearing, Pipes claimed that the mail in question came from the attorney defending him on the state drug charges.  He stated that the details are set forth in administrative grievances that he filed with the Mountrail County jail officials.

[6] If the prisoner was aware  that a phone call with an attorney was being monitored, the mere monitoring of a particular phone call, without more, does not violate a prisoner's Sixth Amendment rights.  <u>Cf.</u> <u>United States v.</u>

(9th Cir. 1990) (holding that an inmate had the right to a contact visit with his attorney for confidential in-person communications, notwithstanding his ability to communicate confidentially with his attorney through mail or over the telephone).  Also, there <u>may</u> be First Amendment implications. <u>See</u>, <u>e.g.</u>, <u>Washington v. Reno</u>, 35 F.3d 1093, 1099 -1100 (6th Cir. 1994).  Construing the allegations most favorably for Pipes, he appears to be alleging that he was effectively prohibited from having <u>any</u> unmonitored telephone calls with his attorney.  Of course, whether this is true or not remains to be seen.  But, assuming the truth of the allegations, at this point there may be no set of facts that Pipes could prove that would demonstrate an entitlement to relief.  Consequently, Pipes should be permitted to proceed with this claim beyond the screening stage.

### 7.      Slander (Claim #7)

Pipes contends that, in March or April 2006, he learned through an acquaintance that a Mountrail County Deputy, who Pipes identified as being Titus (last name unknown), had slandered him by telling local residents that he was "methed-out, dangerous, crazy, belonged in prison, and various other lies."  During the screening hearing, Pipes provided the last name of the Mountrail County Deputy, which is Clouse.

"A cause of action for defamation is not cognizable under section 1983."  <u>Loftin v. United States</u>, 72 F.3d 133 (8th Cir. 1995) (<i>per curiam</i>); <u>see also</u> <u>Miner v. Brackney</u>, 719 F.2d 954, 955 (8th Cir.1983) (per curiam).  Consequently, Pipes has not pled a claim for relief under § 1983 with

---

<u>Hatcher</u>, 323 U.S. 666, 674 (8th Cir. 2003) (stating that the presence of a recording device is the functional equivalent of the presence of a third party); <u>see also</u> <u>United States v. Chaibon</u>, No. 2:06-cr-00091-RLH-PAL, 2007 WL 437704 at *20-21 (D. Nev. February 2, 2007) (finding the Eighth Circuit's reasoning in <u>Hatcher</u> persuasive);  <u>United States v. Thompson</u>, No. 07-30010, 2007 WL 2700016 at *1-3 (C.D. Ill. August, 9, 2007) (same); <u>United States v. Lentz</u>, 419 F.Supp.2d 820, 828-29 (E.D. Va. 2005) (holding inmates waive any privilege protection for telephone conversations when they proceed with conversations in the face of notice that the calls are being recorded and subject to monitoring); <u>United States v. Noriega</u>, 917 F.2d 1543, 1551 & n.10 (11th Cir. 1990).

respect to these allegations.  Moreover, it does not appear that Pipes is asserting a state law claim since he has not alleged such a claim specifically and only asks in his request for relief that the deputy be banned from law enforcement and "charged" with defamation of character, lying to the public, and slandering his name.  These requests are more indicative of Pipes attempting to assert a § 1983 claim under the mistaken belief that slander is actionable under § 1983.

Nevertheless, even if Pipes is attempting to make a state law claim for slander, there are a number of reasons why it should be rejected.  First, the specific relief he requests cannot be granted. Second, he has not sufficiently pled a claim for slander under state law since he has not claimed an actual injury.  See  Gajewski v. Bratcher, 307 N.W.2d 826, 834 (N.D. 1981).  Third, and most importantly, the court should decline to exercise supplemental jurisdiction over any state law slander claim in this instance.

Under 28 U.S.C. § 1367 (a), the court has supplemental jurisdiction over state law claims for which there is not original jurisdiction if the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Section 1367(a) further provides that supplemental jurisdiction extends to claims that involve "the joinder or intervention of additional parties."  Under subsection (c) of § 1367, however, the court may decline to exercise supplemental jurisdiction over a state law claim if, among other things, the claim raises a novel or complex issue of state law, the claim substantially predominates over the claims that give rise to the court's original jurisdiction, or, in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In this case, it is questionable whether there is a sufficient basis under § 1367(a) for the exercise of supplemental jurisdiction over the slander claim.  This is because it is the only claim in

which this defendant is implicated, at least in his personal capacity, and there is little, if any, relationship between the original jurisdiction claims and the slander claim.  Cf. Hutchinson on Behalf of Baker v. Spink, 126 F.3d 895, 902 (7th Cir. 1997) (upholding the dismissal for lack of supplemental jurisdiction of product liability claims against a product manufacturer because it is not sufficiently related to the substantive due process claims being brought in a § 1983 action against government officials); Ferguson v. Cape Girardeau County, 88 F.3d 647, 651 (8th Cir. 1996); (agreeing that the dismissal of a state law claim relating to the foreclosure of a prisoner's house was proper for lack of supplemental jurisdiction in a civil rights action brought by a prisoner against numerous officials for conditions related to his confinement, but remanding for additional findings on whether there was diversity jurisdiction over the defendants sued with respect to the foreclosure claim); Didzerekis v. Stewart, 41 F. Supp. 2d 840 (N.D. Ill.1999) (dismissing for lack of supplemental jurisdiction a  state-law claim for wrongful death against a husband in a § 1983 action brought by the survivors against the city and its police officers asserting a denial of equal protections regarding the manner in which they responded to a 911 call).

But, even if there is a basis for exercising supplemental jurisdiction under subsection (a), there are sufficient grounds under subsection (c) for declining jurisdiction given the following:

- The substantial likelihood of the slander claim predominating over the original jurisdiction claims.  Cf. Krause v. Forex Exchange Market, Inc., 356 F. Supp. 2d 332, (S.D.N.Y. 2005) (allowing one state law claim against a separate defendant to go forward but dismissing other state law claims against the same defendant on the grounds that they would predominate over any common issues even if the claims were sufficiently related).

13

- There is nothing to suggest that assuming jurisdiction over the slander claim would result in judicial economy or convenience.  In fact, quite the contrary.  The lack of any common questions of fact or law between the slander claim and the original jurisdiction claims suggests there would be no such economy.  See Cox v. Sugg, 484 F.3d 1062,  1068 (8th Cir. 2007) (ordering the dismissal of the state law claim from the pending federal claim upon remand on the grounds that the state law claim was analytically distinct from the remaining federal claim).

- Fairness to the other litigants supports not exercising jurisdiction in terms of not subjecting them to the added expense and delay that likely will result in having unrelated claims litigated together.

- Although Pipes claims he is suing the deputy in his official capacity, as well as his individual capacity, he has not alleged a sufficient basis for holding Mountrail County responsible under state law for the alleged defamatory statements.  See N.D.C.C. § 32-12.1-04.  Also, he probably has not pled the proper party. Id. Moreover, even if Pipes had pled a proper state law claim against Mountrail County, it would raise novel and complex issues of state law.  This is because there is little, if any, North Dakota case law addressing the extent to which a political subdivision can be held liable under § 32-12.1-04 for defamatory statements of its officials, particularly given what may be the intentional nature of the statements and the difficult issue of when, and to what extent, an official making such statements would be considered to have acted within the scope of employment.   Cf. Wallin v. Dycus, 224 Fed.Appx. 734, 740, 2007 WL 655043, *5 (10th Cir. 2007) (affirming dismissal

14

of prisoner's state law negligence claims on grounds that they involved issues of law that have not been previously addressed by the Colorado courts); <u>Fielder v. Credit Acceptance Corp.</u>, 188 F.3d 1031, 1038 (8th Cir. 1999).

For all of these reasons, it is recommended that the slander claim be dismissed.[7]

## 8.    Disclosure of confidential information (Claim #8)

Pipes contends that various Mountrail County officials endangered his life by disclosing to the public that he had been providing assistance to law enforcement in an ongoing drug investigation. Pipes contends the information was "confidential." As proof, he makes reference to certain investigative reports and statements that either were marked confidential or stated that the information came from a confidential source.

But investigation reports and information provided by witnesses are commonly considered by law enforcement authorities to be "confidential" while investigations are on-going. Consequently, the mere fact that law enforcement officers may have characterized a report or a particular source as being "confidential" does not mean there was an agreement or some other special relationship that would give rise to an expectation of confidentiality and none has been alleged. Further, Pipes fails to indicate what federal constitutional or statutory right he claims has been violated. And, in this instance, the adverse parties should not be left guessing because none is obvious.

---

[7]    Also, allowing prisoners to join unrelated or marginally-related state law claims promotes the filing of insubstantial and dubious federal claims, of which the federal courts already have enough, simply to gain jurisdiction over supplemental state law claims and to take advantage of the legislative grace provided by 28 U.S.C. § 1915 of being able to proceed *in forma pauperis*. <u>Cf.</u> <u>Bradley v. North Carolina Dept. of Transp., Div. of Motor Vehicles</u>, 286 F. Supp.2d 697, 706-707 (W.D.N.C. 2003); <u>Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Indus., Inc.</u>, 793 F. Supp. 120, 123 (D.Md.1992).

In summary, Pipes has failed to allege enough to fairly put a person on notice of what his claim is, and it should be dismissed.[8]

### 9.      Claim for illegal detention in a "Grade Two" facility (Claim #9)

Pipes contends that he was held at the Mountrail County jail in violation of state law because he was incarcerated for more than ninety days at a "Class B" facility without the approval of the Department of Corrections and Rehabilitation.[9]  He also alleges that Sheriff Halvorson attempted to cover up this violation by having him transferred for a brief period to another facility in McKenzie County.

Again, Pipes has alleged a  violation of state law that does not give rise to a cognizable claim under § 1983.[10]  And, with respect to any state law claim, the court should decline to exercise supplemental jurisdiction given the novel issues of state law that are involved.   In particular, there does not appear to be any North Dakota cases that have decided whether a violation of  N.D.C.C. § 12-44.1-06 would give rise to a private cause of action for damages,[11] nor are there any cases that

---

[8]  Also, no damage or loss has been alleged, and this may also be problematic

[9] Correctional facilities are graded pursuant to N.D.C.C. § 12-44.1-06 as follows:
a. "Grade one" means a correctional facility for confining inmates not more than one year.
b. "Grade two" means a correctional facility for confining inmates not more than ninety days.
c. "Grade three" means a correctional facility for confining inmates not more than ninety-six hours.

N.D.C.C. § 12-44.1-06.  "Grade two and grade three correctional facilities do not need to provide outdoor recreation areas or exercise rooms separate from dayrooms."  N.D.C.C. § 12-44.1-06.1  The length of confinement of a prisoner may be temporarily increased on a case-by-case basis in grade one and grade two correctional facilities upon the request of the administrator and the approval of the Department of Corrections and Rehabilitation.  N.D.C.C. § 12-44.1-06.

[10]  Pipes has not alleged, for example, that the conditions of confinement were such that they would give rise to an Eighth Amendment claim.

[11]  Most likely, the statute does not give rise to a private cause of action since the statute makes no provision for it.  See Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 2001 ND 116, ¶ 14, 628 N.W.2d 707 (N.D.) (the "legislature's silence in failing to expressly provide a private right of action is a strong indication it did not intend such a remedy.").

discuss the potential impact of the language of N.D.C.C. § 32-12.1-03 upon any such liability.[12]
Further, given that Pipes has long since been released from Mountrail County, there is no basis for
granting injunctive relief.

Consequently, this claim should be dismissed.

### 10.    Accounting of Personal Property (Claim #10)

Pipes' alleges that he was denied an accounting of his personal property in violation of state
statute.[13]   Again, this is not a cognizable § 1983 claim.

As for any state law claim, it is doubtful whether N.D.C.C. § 12-44.1-12 creates a private
cause of action for damages and Pipes has not claimed any loss or damage.  But, even if there is a
cognizable state law claim,  the court should decline the exercise of supplemental jurisdiction given
the novelty of the issue of whether a private cause of action is created.

### 11.    "Lying" (Claim #11)

Pipes claims that an unidentified Burleigh County Deputy lied regarding the status of his
trailer that apparently was foreclosed upon.  It is not clear from the complaint exactly what the "lie"
was or what harm, if any, was suffered as a consequence.  Simply put, the allegations are so vague

---

[12]  N.D.C.C. § 32-12.1-03 reads in relevant part as follows:
The enactment of a law, rule, regulation, or ordinance to protect against any person's health, safety,
property, or welfare does not create a duty of care on the part of the political subdivision, its
employees, or agents, if that duty would not otherwise exist.

[13] Pipes cites to N.D.C.C. Ch. 12-44, which was repealed by S.L. 1979, ch. 172, § 29.  N.D.C.C. § 12-44.1-12
provides:
A written, itemized inventory of all personal property taken from an inmate at the time of admission
shall be made by correctional facility staff. The property, including money and other valuables, shall
be secured and the inmate given a receipt for all property to be held until the inmate's release unless
the inmate requests a different disposition in writing. Upon release, the items of inmate personal
property shall be compared with the inventory list, and the inmate shall sign a receipt for the property's
return. If the inmate is released for transfer to another correctional facility, the correctional officer
transporting the inmate shall sign the receipt. The releasing correctional facility shall maintain a copy
of the property receipt for its files.

and conclusory that they fail to state a claim, much less a claim cognizable under § 1983.  The claim must be dismissed.

### 12. Failure to process prisoner complaints and grievances (Claim #12)

At various points in his complaint, Pipes claims that Mountrail County jail officials did not respond to his administrative grievances.  Likewise, he alleges that certain JRCC personnel have discouraged him from filing grievances.

Prisoners have no substantive constitutional interest in prison officials following state prison regulations, including prison grievance procedures.  See, e.g., Buckley v. Barlow, 997 F.2d 494, 495(8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by a prisoner); Blackman v. Appeals of Coordinator at Corcoran State Prison, 2005 WL 1397785, *1 (E.D. Cal. 2005); see Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations).  Consequently, these claims should be dismissed.

### 13. Bad tooth claim (Claim #13)

Pipes alleges several instances of  the Mountrail County Sheriff's Office failing to address his medical needs while he was incarcerated in the Mountrial County jail.  Construing the complaint liberally, it appears he is attempting to allege violations of the Eighth Amendment.  One of the claims has to do with an infected tooth, which is dealt with in this section.  The others relate to his treatment for anxiety and the administration of the drug Paxil, which are discussed in the succeeding sections.

The Eighth Amendment requires that the government "provide medical care for those whom it is punishing by incarceration."  Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002).  In Jolly

v. Knudsen, the Eighth Circuit described the extent of this constitutionally imposed duty and what

is required to prove a breach as follows:

> Prison officials or their agents violate the eighth amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Our court has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

Jolley v Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000).

In light of these substantive requirements, the plaintiff  must allege that he or she suffered

an actual or imminent injury that is sufficiently serious to give rise to an Eighth Amendment

violation in order to state a cognizable claim.  Smith v. Arkansas Dep't. of Corrections, 103 F.3d

637, 643 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343 (1996); see also Maurice B. Madison-

Bey v. Correctional Medical Services, 180 Fed.Appx. 608, 2006 WL 1278690 (8th Cir. 2006)

(unpublished *per curiam* decision upholding the dismissal of a § 1983 claim for failure on the part

of the plaintiff to allege that he had suffered harm as a result of an unconstitutional policy or

custom).  "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth

Amendment violation, 'the objective seriousness of the deprivation should be measured by reference

to the *effect* of delay in treatment.'"  Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005).

Pipes claims that he had a bad or infected tooth that caused him pain while he was

incarcerated at the Mountrail County jail.  He acknowledges he was offered an extraction, but claims

he was entitled to a root canal, a less-invasive treatment that allegedly would have saved  the tooth.

He alleges the reason for his being denied the less-invasive treatment is that the Mountrail County jail officials had adopted an extraction-only policy premised on cost and that the contract dentist was otherwise willing to perform the root canal.[14]

Several courts outside the Eighth Circuit have suggested or inferred that following an extraction-only policy may give rise to an Eighth Amendment claim in certain circumstances. E.g., Chance v. Armstrong, 143 F.3d 698, 703-704 (2d Cir.1998), Simon Banks v. York, __ F. Supp. 2d __, 2007 WL 2697064, *6 (D.D.C. 2007); see O'Connor v. McArdle, 217 Fed. Appx. 81, 2007 WL 627461, *1 (2nd Cir. 2007) (summary order); Swartz v. Steinhauser,125 F.3d 859 (Table), 1997 WL 599547, *1 & n.2 (9th Cir. 1997).

Other courts, however, have held or suggested that following an extraction-only policy would not violate the Eighth Amendment. James v. Pennsylvania Dept. of Corrections, 230 Fed. Appx. 195, 2007 WL 1231730, *1-2 (3rd Cir. 2007) (unpublished per curiam decision) (no Eighth Amendment claim against doctor or state prison officials for an extraction that was within the policy of providing for extractions and not root canals for abscessed teeth, and the decision was not based on any ulterior motive other than routine patient care); McQueen v. Karr, 54 Fed. Appx. 406, 2002 WL 31688891, *1 (5th Cir.2002) (affirming dismissal of a § 1983 claim based on the denial of restorative treatment rather than extraction of his injured teeth); Johnson v. Alameda County Sheriff's Dept., 892 F.2d 83 (table), 1989 WL 150630, *2 (9th Cir. 1989) (no Eighth Amendment violation when prisoner was offered extraction only in lieu of a full root canal); Wilkens v. Ward, 2007 WL 2407082, *6-7 (W.D. Okla. 2007), Ball v. Johnson County Jail,  2004 WL 2338105, *2

---

[14] In Pipes' most recent complaint, he claims that the bad tooth remains painful and that prison officials at the JRCC, where Pipes is now housed, likewise follow an extraction-only policy.  Pipes goes on to state, "[t]he dentist doesn't know if the tooth is saveable [sic] or not but wants to pull it."  What is not known is whether the condition of the tooth has changed.

20

(N.D. Tex. 2004) (extraction only option does not give rise to an Eighth Amendment claim); Kopera v. Cook County Bd. of Com'rs, 1994 WL 577238, *5 (N.D. Ill. 1994).

In the Eighth Circuit, it appears to be an open question as to whether following an extraction-only policy may give rise to an Eighth Amendment violation. In Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, *1 (8th Cir. 1999), the Eighth Circuit concluded that offering an extraction instead of root canal did not violate the Eighth Amendment. Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, *1 (8th Cir. 1999). But, in that case, the facts were that one examining dentist had recommended a root canal and another an extraction, and the Eighth Circuit concluded that a mere disagreement over the preferred method of treatment would not give rise to an Eighth Amendment claim. Id.; see also Moore v. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir. 1997) (expressing concern that an alleged delay in treatment may have necessitated an extraction). More recently, the issue of whether an extraction-only policy violates the Eighth Amendment was presented in Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007), but the court concluded it did not have to decide the issue because the plaintiff in that case lacked standing.

It is recommended that Pipes be allowed to proceed with this claim past the screening stage given the uncertainty in the law in the Eighth Circuit. Also, additional factual development may make clear that extraction was a medically preferred treatment at the time and that there is no constitutional issue. Davis v. Norris, supra; see also Hogan v. Russ, 890 F. Supp. 146, 149 (N.D.N.Y. 1995).

### 14.   Claims against Mountrail County Sheriff's Office officials related to the treatment for anxiety and the administration of Paxil (Claim #14)

Pipes claims that he developed anxiety shortly after arriving at the Mountrail County jail. As a result, Sheriff's Deputy Corey Bristol transported him to the Mountrail County clinic, where Dr. Heninger wrote him a prescription for Paxil and, allegedly, advised him to return in six weeks for a reevaluation and, if necessary, an adjustment to his dosage.  Pipes makes several complaints regarding his treatment for anxiety while at the Mountrail County jail, but none give rise to an Eighth Amendment violation.

One of Pipes' complaints is that the Mountrail County officials did not take him to Dr. Heninger for a reevaluation within the six weeks allegedly recommended by Dr. Heninger.  Instead, Pipes claims it was twelve weeks before he saw Dr. Heninger in person.

Pipes states in his complaint, however, that he was permitted to communicate with Dr. Heninger by phone and by letter in the interim and that the dosage of Paxil was increased "through a letter or phone call."  At the screening hearing, Pipes appeared to be claiming that the letter or phone call instead resulted in Dr. Heninger requesting a return visit.  Regardless of the details, Pipes acknowledged during the screening hearing that  he saw Dr. Heninger a total of three times for his anxiety issues and it is clear that any failure to allow him to see Dr. Heninger on the schedule he claims he should have seen him did not result in any condition that would warrant Eighth Amendment relief, much less exhibit the necessary deliberate indifference to make out a constitutional claim.

Pipes also claims that he began suffering "prolonged painful erections" during the nighttime after he began taking the Paxil.  He claims that he asked to be able to take his medication earlier in the day to alleviate this side effect, but this was initially refused because of a staff person's concern

that the Paxil would make him too sleepy during the day.  He acknowledges, however, that, after he complained about the matter, Sheriff Halvorson, within a few days, allowed the medication to be given earlier in the day.  During the screening hearing, Pipes confirmed that the painful nightly erections then went away and that, in total, they had lasted only several days.  Consequently, this was not a serious enough condition to give rise to an Eighth Amendment violation and, likewise, there is no indication of any deliberate indifference exhibited by Mountrail County jail officials with respect to the "painful erections" complaint.

Pipes claims that, on one day, he was denied his daily dosage of Paxil because of an alleged error in giving him a double dosage the previous day.  He claims his anxiety level increased as a result.  However, there is nothing pleading any lasting condition and Pipes confirmed during the screening hearing that the increase in anxiety was temporary and for that one day only.  Again, this was not a serious enough condition to violate the Eighth Amendment, nor is there anything indicating deliberate indifference.

Pipes claims in his complaint that he now suffers from "erectile dysfunction" as a result of his having taken the Paxil, but this conclusory allegation said nothing about the actual nature or seriousness of the condition. During the screening hearing, Pipes stated that the "erectile dysfunction" he claims he is suffering is an inability to now get an erection as frequently as before he started taking the Paxil.  He stated that this condition did not arise until after he was discharged by Mountrail County and that he believes it is now permanent.  He acknowledges, however, that he is able to get an erection (only the frequency has allegedly been impaired) and that  he  has not seen a medical doctor for this problem.

23

Pipes claims that Dr. Heninger should be held responsible for this condition. This allegation will be addressed in the next section. In terms of the Mountrial County jail officials, Pipes' only complaint, since the condition did not arise until after he left the Mountrail County jail, is the failure to provide him with the written product literature that accompanied the Paxil when it was first administered. Pipes claims that the written product literature warns about decreased sexual functioning as a possible side effect and that he would not have taken the Paxil had he known of this possibility.

There is no indication, however, that Pipes asked for the product literature and was refused. Further, he acknowledged during the screening hearing that he eventually gained access to the product literature while at the Mountrail County Jail prior to his last visit with Dr. Heninger, that he failed to ask Dr. Heninger anything about what was in the product literature during his visit with Dr. Heninger, and that he continued to take the Paxil after first receiving the literature although he later stopped sometime after being released from Mountrail County. Finally, as already noted, Pipes complains in this action about the failure to administer the Paxil on one day after he allegedly received a double dose.

All of this belies Pipes' after-the-fact claim that he would not have taken the Paxil had he been given the product literature when the Paxil was first prescribed. But, in any event, it is clear from the facts pled in the complaint, supplemented by what Pipes said during the screening hearing, that there was no deliberate indifference on the part of the Mountrail County officials in not initially providing the product literature. Hence, any Eighth Amendment claim with respect to the alleged decreased sexual functioning fails against the Mountrail County officials for this reason. Further, it is highly doubtful that decreased sexual functioning is a serious enough condition to give rise to

an Eighth Amendment claim.  See Beatty v. Charkravorty, 1997 WL 605112, *4 (S.D.N.Y. 1997) (holding with respect to a claim for "erectile dysfunction" that a mere decrease in sexual functioning is not sufficiently serious to give rise to an Eighth Amendment violation).

In summary, the claims against the Mountrail County officials related to the treatment for anxiety and the administration of Paxil should be dismissed for failure to state a cognizable claim under § 1983.

### 15.    Claim against Dr. Heninger re the prescription for Paxil (Claim #15)

Pipes' claim against Dr. Heninger is that he failed to properly monitor the side effects of the Paxil that he prescribed and that Pipes now suffers erectile dysfunction as a result.

There are numerous problems with the claim against Dr. Heninger.  First, Pipes has failed to allege a cognizable Eighth Amendment claim since he has not alleged, and there is no basis for concluding based on the facts that he has pled and what he stated during the screening hearing, that Dr. Heninger was deliberately indifferent to his medical needs.  Also, as already noted, it is highly doubtful that a mere decrease in sexual functioning is a serious enough condition to give rise to an Eighth Amendment violation.

Second, the only relief that Pipes seeks against Dr. Heninger is the following:

> I would like Dr. Heninger to retake his oath and use his own God given discretion
> instead of the word of incompetent officers such as are employed at the MO. CO.
> SO.  [presumably the Mountrail County Sheriff's Office].

Docket No. 1.  Obviously, the court is not empowered to grant this relief.

Third, Pipes has not stated that he is making a state law malpractice claim and the relief that he requests suggests one has not been pled.  But, even if Pipes intended to assert a state law claim, the court should decline to exercise supplemental jurisdiction under the authority previously cited

given that any such claim would be "analytically distinct" from any other claim (particularly if the Eighth Amendment Claim relating to the Paxil is dismissed) and also because it likely would predominate over any cognizable federal claims.

### 16.    Refusal to take action re a stolen vehicle (Claim #16)

Pipes claims that, while he was incarcerated, his car was stolen and that Mountrail County authorities refused to allow him to report that his car was stolen - at least initially.  He claims that seven months later they did arrange for him to speak to a Bureau of Indian Affairs officer, but that no attempt was made to find the car even though he advised them where it was at.  Pipes alleges the following:

> I was denied by the Staff and Sheriff and Deputies to the right to file a stolen car report because I was an inmate and while (and I suspected a native stole my car.) Plus my car was not yet in my name.

Later, he also alleges:

> While incarcerated my car . . . was stolen.  When I tried to report the car stolen they refused to allow me to report the car stolen.  Glenda (staff) stated because I was white an inmate and because the car had not yet been transferred into my name (the title).  After 7 months I was finally allowed to speak to a B.I.A. officer (again as a cover up for not taking a report.) in Ken Halvorson's office.  No attempt was made to find the car.  I told the officers where the car was reported to be.  It was confirmed by the one who stole the car, Coty Mossette of Parshal/Twin Buttes in Sheri Grizzle's presence (of Parshall, ND.)

(Docket No. 1).

By his own admission, Pipes was given the opportunity to report that his car was stolen, first to Mountrail County officials and later to the BIA.  His real complaint is the alleged non-action by the Mountrail County officials.

Private citizens have no constitutional or other right to right to a criminal investigation. Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right,

much less a constitutional right, to an investigation."); <u>Koger v. Florida</u>, 130 Fed.Appx. 327, 335,

2005 WL 1027204, *6 (11th Cir. 2005); <u>cf.</u> <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) ("a

private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

another"); <u>Dohaish v. Tooley</u>, 670 F.2d 934, 935 (10 th Cir. 1982); <u>Fulson v. City of Columbus</u>, 801

F. Supp. 1, 6 (S.D. Ohio 1992) ("Thus, courts have generally declined to recognize standing on the

part of victims of crimes to bring a § 1983 action based upon lack of prosecution of others.")

Consequently, the mere failure on the part of the Mountrail County officials to take action does not

give rise to a § 1983 claim.

Pipes also claims that race was a factor in the decision not to take action, but it is clear from

the facts pled in the complaint and what else Pipes stated during the screening hearing that there are

no unlawful race-based animus.  Pipes acknowledged that one of the reasons that was given for the

alleged failure to act was the fact that the title to the vehicle had not yet been transferred to him.

This alone would be a legitimate reason to conclude that the matter should not be criminally

investigated and that Pipes should be left to his civil remedies.  <u>See</u> <u>Hosna v. Groose</u>, 80 F.3d 298,

304 (8th Cir. 1996) (claims of disparate treatment are reviewed under the rational basis standard

when there is no allegation that the plaintiff is a member of a suspect class).

Morever, it is clear from what Pipes has pled and stated that concern that may have been

expressed about Pipes being "white" was the Mountrail County officials' lack of jurisdiction over

the person whom Pipes identified as the thief.  Pipes alleges that the person who stole the vehicle

was a Native American and that the vehicle was located in or near Parshall, North Dakota, which

is on the Fort Berthold Indian Reservation.  In North Dakota, state and local law enforcement

officials do not have criminal jurisdiction over Indian persons on Indian reservations.  Morever,

27

Pipes admits that he was allowed to speak with a Bureau of Indian Affairs officer, which is further confirmation that jurisdiction was a concern since only BIA law enforcement and the FBI would have jurisdiction.

Later, in his complaint, Pipes also claims that he visited with a North Dakota Highway Patrol Officer who was at the Mountrail County jail and explained to him, among other things, that the Mountrail County Sheriff's Department refused to take action with respect to his stolen vehicle. In his prayer for relief, he requests that the patrol officer be investigated for refusing to uphold state law and that he be charged with any crimes he may have committed in not doing his duty. With respect to these allegations, they obviously do not state a cognizable constitutional claim for the reasons already stated. Further, the relief that Pipes asks for is relief that this court is unable to grant.

In summary, it is clear that Pipes has no constitutional claim against the Mountrail County officials or the state highway patrol officer for failure to act with respect to his stolen car based on what he has pled.

### 17.   Failure to investigate and prosecute alleged assaults upon Pipes' daughter (Claim #17)

Pipes contends that Mountrail County authorities refused to press charges against two individuals who had allegedly assaulted his daughter. For example, Pipes alleges the following with respect to Deputy Jessica Folden of the Mountrail County Sheriff's Office:

> Deputy Jessica Folden refused to charge a 45 year old white male of Parshall, ND with assault on my 12 year old daughter Brittany Pipes and she also failed to charge a woman from the area with assault on the/my same daughter. The male was Kenny Evenson the female was Kathy Evenson. Her Duty!

Later in the complaint, he alleges:

The Mountrail Co. Sheriffs Dept. also refuses to press charges against Kenny Evenson of Parshall and Kathy Evenson of the Parshall surrounding area these are both white adults and have assaulted my daughter Brittany Pipes Kenny Evenson grabbed my daughter by the throat and threw her down, Kathy Evenson Beat my daughter Brittany on new years Eve 2006-2007. Jessica Folden (Deputy) refused to investigate.

Also, in connection with the alleged assaults and more recent allegations of abuse reported by his ex-wife (that Pipes stated during the screening hearing may not be credible), Pipes seeks to sue John Evenson, Sue Lloyd, and Vicki Klein, who are all employed at the JRCC where Pipes is now incarcerated. Klein and Evenson are social workers and Lloyd is described as being Pipes' case manager. The claims against these individuals are that they refused to file reports with "proper" authorities after Pipes informed them of the alleged assaults and that they otherwise have failed to take action on his complaints.

Under the authority previously cited, Pipes has no constitutional or other federal statutory right to an investigation or prosecution. Hence, he has no § 1983 claim. Also, based on what has been pled and what Pipes stated at the screening hearing, it is abundantly clear that Pipes has communicated his allegations of alleged assault to virtually every state official who conceivably might have authority to investigate the matters, as well as the FBI. Consequently, there is no casual connection between any alleged failure to report and the claimed lack of action on the part of the authorities who would have jurisdiction to act.

18.     **Failure of state officials to investigate his alleged claims of illegality and violation of his civil rights (Claim of #18)**

Pipes claims that Special Agent Dale Maixner of the North Dakota Bureau of Criminal Investigation promised that Steve Engen would visit him to discuss the civil rights and other violations allegedly committed by the Mountrail Sheriff's Department and also in the McKenzie

County jail.  Engen is an employee of the North Dakota Department of Corrections.  Pipes' only complaints against Engen, however, are that he has not met with Pipes and has not conducted the investigations that Pipes believes need to be conducted.  Likewise, he makes the same failure to investigate allegations against defendant Maixner.  Finally, Pipes alleges that an unknown North Dakota Highway Patrol Officer took no action when he tried to relay the same complaints to him.

The prior discussion regarding the lack of any constitutional or federal right to an investigation disposes of these claims.

### 19.    Legality of the search of Pipes' residence and vehicle (Claim #19)

Pipes complains about the searches of his daughter's residence and his vehicle on February 10, 2006, which led to the charges for which Pipes is currently incarcerated.  Pipes contends that the searches were invalid to the extent they were conducted outside the presence of his probation officer, without a warrant, and without the consent of his daughter, the owner of the residence.  In his prayer for relief, he seeks the dismissal of all charges pending against him in Mountrail County as well as $300,000 in damages.

As previously noted, Pipes has since entered a guilty plea to two of three counts related to the charges arising out of the searches.  The third count was dismissed.  The Eighth Circuit has held, however, that the entry of a plea of guilty is not a complete defense to a § 1983 claim in this situation and further that  a Fourth Amendment challenge to a search is not necessarily Heck barred because success on any Fourth Amendment claim will not in all situations undermine the invalidity of the judgment of conviction.  E.g., Collins v. Burns, 195 Fed.Appx. 2006 WL 1961199, *1 (8th Cir. 2006) (unpublished per curiam opinion); Moore v. Sims, 200 F.3d 1170, 1171-72 (8th Cir. 2000) (per curiam).  While the court is dubious about Pipes' Fourth Amendment claims, particularly given

that he was a probationer and likely subject to search, at this point there may be facts that he could prove to establish a constitutional violation. Consequently, it is recommended that he be permitted to proceed past the screening stage with respect to his Fourth Amendment claims - at least to the extent that he is suing to redress an alleged violation of his rights and not the rights of his adult daughter, who is not a party to the action and who Pipes would not be entitled to represent given that he is not an attorney. But, Pipes needs to be aware that he cannot use this claim as a challenge to his underlying conviction while he remains incarcerated and, if that becomes an issue, the claim will have to be dismissed.

### 20.   Claims against State's Attorney Wade Enget (Claim #20)

Pipes claims that Enget acted unlawfully by proceeding with the criminal prosecution against him despite being personally aware of the claimed illegality of the above referenced searches. He also complains that Enget failed to prosecute various Mountrail County Sheriff's Office personnel for felonies that Pipes claims resulted from the disclosure of the confidential information previously discussed in connection with an earlier claim.

Since both of these allegations relate to prosecutorial decisions, Enget clearly has absolute immunity from suit both under federal and state law. See, e.g., Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.); Riemers v. Anderson, 2004 ND 109, ¶ 7, 680 N.W.2d 280 (N.D.). Consequently, the claims against him must be dismissed.

### B.   Individual defendants

#### 1.   United States of America

The United States must be dismissed if Claim #1 is dismissed as recommended.

### 2.    Steve Engen and Dale Maixner

Steve Engen and Dale Maixner, both state employees, should be dismissed for the reasons stated with respect to the recommended dismissal of Claim #18.   Further the claims against them in their official capacities for damages have to be dismissed in any event.   This is because it is well-established that a suit against a state employee in his official capacity is a suit against the state and that the state has Eleventh Amendment immunity in suit brought under 42 U.S.C. § 1983 from any claim for damages.   E.g., Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999).

### 3.    Ken Halvorson and Corey Bristol

Ken Halvorson is the Sheriff of Mountrail County and Corey Bristol the Chief Deputy. These two individuals should remain as parties in their individual and official capacities if any of the following claims are permitted to proceed forward:  Claim #4 (interfering with legal mail); Claim #6; (monitoring attorney-client conversations); Claim #13 (Eighth Amendment failure to treat bad tooth claim), and Claim #19 (Fourth Amendment search claims).

### 5.    Jessica Folden

Jessica Folden is a Mountrail County Sheriff's deputy according to the complaint.  Pipes implicates her only in his claims regarding the alleged disclosure of confidential information (Claim #8 ) and the alleged failure to investigate assaults upon his children (Claim #17).  If these claims are dismissed, then Jessica Folden should be dismissed from the action.

### 6.    Deputy Titus (last name unknown)

The only claim this defendant is implicated in is Claim #7, which is the slander claim.  If this claim is dismissed, then Deputy Titus (last name unknown) should be dismissed.

### 7.    Steve Hall

Pipes identified Steve Hall as a Burleigh County Deputy investigator.  The only claim against him is Claim #11 of "lying."  If this claim is dismissed, then Steve Hall should be dismissed.

### 8.    Jason (last name unknown)

Pipes identifies Jason (last name unknown) as an FBI agent who Pipes claims he told about his problems with Three Affiliated Tribes allegedly denying him contact with his children, his complaint about his car being stolen, and the various civil and criminal violations Pipes claims have been committed by the Mountrail County Sheriff's Office.  Pipes' claim against him is that he failed to take any action with respect to these matters and requests that he be "reprimanded" for the failure to do his duty.   Jason (last name unknown) must be dismissed from the action because of the lack of a constitutional right to an investigation and the fact the court has no power to grant the relief requested.

### 9.    Steve Gutknect

Pipes claims that Steve Gutknect is a North Dakota Bureau of Criminal Investigation Officer and that he was involved in an allegedly illegal search of his vehicle that, in part, is the subject of Claim #16.  The only relief that Pipes seeks with respect to this defendant is that he be reprimanded for the allegedly illegal search and for listening to officers [*i.e.*, Mountrail County Sheriff's Department officers] he believes to be "lazy and unprofessional."  He also asks that the items seized be "removed from the evidence inventory."   Obviously, the relief that Pipes seeks with respect to Gutknect cannot be granted by the court.  Consequently, it is recommended that this defendant be dismissed.

### 10. McKenzie County Sheriff's Office/Jail

Pipes claims that, while incarcerated for a short time in the McKenzie County jail, he was removed from his cell because "maintenance" needed access and that, when he returned, his legal papers were out of the envelopes and all over the floor. His complaint is that McKenzie County officials failed to respond to his grievance regarding this matter and refused to disclose the names of the persons allegedly involved. For reasons stated with respect to Claim #12, Pipes has failed to plead a cognizable claim with respect to the McKenzie County Sheriff's Office, and this defendant should be dismissed.

### 11. John Evenson, Sue Lloyd, and Vicki Klein

As already noted, defendants John Evenson, Sue Lloyd, and Vicki Klein are all employees of the JRCC where Pipes is now incarcerated and are only implicated in the claim alleging the failure to report and/or investigate the alleged assaults upon Pipes' daughter. If Claim #17 is dismissed, then these defendants should be dismissed. In addition, the claims against these individuals in their officials capacities would have to be dismissed in any event because of the State of North Dakota's Eleventh Amendment immunity.

### 12. Dr. Heninger

Dr. Heninger should be dismissed for the reasons stated with respect to Claim #15.

### 13. Unknown highway patrol officer

The unknown highway patrol officer should be dismissed for the reasons stated with respect to Claim #'s 16 & 18.

### 14. State's Attorney Wade Enget

State's Attorney should be dismissed for the reasons stated with respect to Claim #20.

34

### C.      Pipes' children as named plaintiffs

Pipes' children should be dismissed as party plaintiffs for several reasons.  First, they have no loss of consortium claim under § 1983 as a matter of law given the nature of the claims that are being made. See Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 877 (D. Minn. 2001) (citing other cases); cf. Westcott v. Crinklaw, 133 F.3d 658, 660 (8th Cir.1998).   Likewise, they have no derivative claim with respect to any state law claim that Pipes may be making.  Butz v. World Wide, Inc., 492 N.W.2d 88, 92-92 (N.D.1992).   Second, it does not appear from what is being pled that Pipes is attempting to assert claims, other than derivative claims, on behalf of the children, but, even if he is, the children have no conceivable claim as to the matters that will survive screening if the recommendations set forth herein are adopted.

Third, Pipes is obviously not a fit or proper person to litigate the claims on behalf of children given his prisoner status, the fact he is proceeding *pro se*, and the fact that he is not the parent or guardian with physical custody of the children.  If the children have claims, they can be brought by the parent or guardian who has physical custody.  Cartano v. Santa Clara County, 2002 WL 1677723, *2 (N.D. Cal. 2002) (upon review of a *pro se* complaint for permission to proceed *in forma pauperis*, the court concluded that a parent proceeding *pro se,* who was not the parent or guardian with physical custody, was not the appropriate person to represent the named children and dismissed the complaint for this and other grounds pursuant to 28 U.S.C. § 1915(e)).

## IV.      CONCLUSION AND RECOMMENDATION

Having conducted an initial review of Pipes' complaint, it is hereby **RECOMMENDED** that:

1.      Pipes' children be dismissed as parties from the action without prejudice.

35

2.      Pipes be permitted to proceed against defendants Ken Halvorson and Corey Bristol

in both their individual and official capacities, but only with respect to the following

claims:

        a.      Claim #4 (interfering with legal mail);

        b.      Claim #6; (monitoring attorney-client conversations);

        c.      Claim #13 (Eighth Amendment failure to treat bad tooth claim); and

        d.       Claim #19 (Fourth Amendment search claims).

3.      All of the other claims and defendants be dismissed without prejudice for the reasons

indicated above.

4.      Although a number of the deficiencies referenced in the foregoing report may not be

curable, Pipes be given an additional fifteen (15) days following the court's action

on the foregoing recommendations to file a proposed amended complaint addressing

the deficiencies, but advising Pipes that the submission of an amended complaint

may delay action on the claims that the court is allowing to go forward.

## V.      ORDER TO SHOW CAUSE AND NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(3)(4), Pipes may object to the above recommendations by filing

written objections within twenty (20) days after being served with a copy of this Report and

Recommendation.[15]  Failure to file appropriate objections may result in the recommended action

being taken.  If additional time is required, it may be requested.

---

[15]  The usual time for responding to a magistrate report and recommendation is ten days.  Additional time is being granted to allow for the preparation of the transcript of the screening hearing , which will be made available both to the district court and to Pipes.

It is also hereby **ORDERED** that, if Pipes disagrees with the recommendation that the court decline supplemental jurisdiction over any state law claims that he may be making, particularly with respect to Claims 7, 9, 10, and 15, Pipes must show cause in writing within the time period set forth above for making objections why as to each state law claim the court should exercise jurisdiction and not dismiss the claim without prejudice. (A dismissal without prejudice means that the dismissal is not intended to prevent the bringing of the claim in state court.) The failure to show appropriate cause may result in the state claims being dismissed without prejudice because the court has declined to exercise supplemental jurisdiction.

Dated this 21st day of November, 2007.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge